Peck, J.
delivered the opinion of the court.
We are of opinion that the agreement proved to have existed between the elder Hammonds and Hopkins, is a mortgage; and we are further of opinion, that the proof offered by Hopkins does not establish his pretended purchase of the equity of redemption. The evidence of this purchase resting upon him, he should have made it clear, knowing as he did, that Hammonds held his covenant, which creates the mortgage. It is not probable that he would have rested his purchase in part; but supposing his habits to have been careless, the proof offered to that point leaves it uncertain and inconclusive. The point most earnestly pressed, and which we esieem of mostVeight, is that upon which the chancellor put the case, the plea of the statute of limitations of seven years.
*528 The chancellor has no doubt allowed this plea under the provisions of our act of 1819, ch. 28. Prior to the passage of that act, it was never pretended in this state, that limitations applied as between mortgagor and mortgagee. It would be a waste of time to go into a detail of authorities to establish this position. The trust, for so it is called by the writers on mortgages, was never taken to he within the statutes of 1715 or 1797, as to real estate. And as to personals, we, at the present term, in the case of Overton vs. Bigelow,(a) held that our acts do not apply to the equity which appertained to either mortgagor or mortgagee. Whatever dicta gentlemen may find in some of the more modern English cases, which some have construed into a supposed authority in favour of the operation of the statute, and that the mortgagee in possession is in adversely to the mortgagor, we venture to assert that no such case has been so decided where the point was directly made. That time in the court of equity has been taken in analogy to the statute of limitations is admitted. But what is meant by this expression in analogy to the statute? We do not understand by the terms used, that we are to take the same period which the statute has forged for the courts of law. All that is intended to be expressed, is, that equity will interpose her rules as to periods within which she will act upon rights purely equitable. She will not enforce stale equities, but will rather, when great length of time has intervened, decline her interference, upon a presumption that if the claim had been well founded, and had not been satisfied, it would have been presented earlier; quiet and repose are the object of the statutes of limitation. Courts of equity regard quiet and repose, as much as the courts of law are bound to regard them by the statutes. But the time or periods established arc their own; and the courts of *529 law will be followed in equity as to time only, where the jurisdictions are concurrent, and where the statute would operate had the case been in the other court, and could there have been pleaded. But time taken in analogy to the statute is not to be understood as a rule established following the statute of James, because the period in that statute was 20 years. The rule existed before the statute, and the rule had its foundation in presumption. Time became a witness, and was so interposed. But it does not follow that because the statute of James followed the rule, and established in accordance with it 20 years, that the rule here must instantly cease and follow the statute of seven years. If it had been so, why did we not, as far back as 1715, apply time by analogy to the limitation of three years, to debts, though not named in the statute. If limitation and time were both to become the witness of presumption alike applicable in both forums, the reasoning would be as strong in the one as in the other case; but our ancestors have not so understood the subject. They, for one hundred years, have kept limitations and time distinct and separate; time in chancery cast her oblivion over long past transactions peculiar to that forum; and statutes gave parties who chose to rest upon them the means of quiet in the cases and times specified in such statutes. But we are called directly to the act of 1819, ch. 28, sec. 1 and 2, where it is said equities are barred in express terms. The preamble to this act will at once reject such an application of it. The object of the act is twofold; first, it is to give proper construction to the acts of limitation; and second, to instruct men of whom they may safely take titles or buy land. Before we go into the act, it is proper to look to the relation of mortgagor and mortgagee. In feudal times unlettered men used signs by which the relation of the tenant to 1ns lord was manifested; he was found on the land with his badge, or mark of fealty. If he cast off this and assumed another, it was a dessei- *530 sin, and the landlord instantly had his remedy, for he must have one who is loyal to perform the service; and to this day a tenant, before the law will allow him to assume the character of a disseisor, must surrender and put an end to his relation to his landlord. The relation of mortgagor and mortgagee is just as strong. Nay, the law will not let the mortgagee at his will put an end to the trust relation in which he stands to the mortgagor. To show the absurdity of such an admission, we will put a possible case. The mortgagee is in possession of the estate, taking the rents as so much extinguishment of his lien on the land, and then, holds and receives for one day short of the term of seven years; the amount may equal, and even overrun the demand; he holds one day over, and then the seven years having run, he has the land by the statute of limitation. A bill will not lie for the rents received, because the statute has attached; for if you cannot proceed for the principal, how can you proceed for the incident; if the land was his for-seven years, so was the rent. But the mortgagee had at the time he took the mortgage, also taken a bond for the money; this is a common practice. What will prevent him from suing for and recovering that also ? Seven years will not bar the debt on the bond; and thus extending by construction the act of 1819, to this class of cases, we cast toils about the unwary and helpless from which they can by no art be extricated. To prevent these evils, hold them to their relation. In other states of the union, where in some particulars touching mortgages the courts of law are vested with the jurisdiction, and where this translation of power has been given by statute, it has been expressly confined to the object; and no attempt has been made-to translate this jurisdiction of equity to common law, with the exception of Tennessee. The attempt now made to favor such jurisdiction upon the second section of the act, how unfit it would be to tolerate, must we think be seen in the consequences *531 which will inevitably flow from its introduction. I have spoken of the relation of mortgagor and mortgagee.— What signs or indicia does the law give by which mankind are notified of the relation? I answer, in the requisition that the mortgage shall be recorded. But it is said here a deed absolute upon its face, was the only matter of record. Answer — the condition to that deed, which made it a mortgage, attached itself to Hopkins and his vendee with notice, and estopped them from denying the relation of trustee.
It is said this condition has not been recorded. An-. swer — there is no act requiring that it should. When the deed without the condition was registered, at most it was hut prima facie evidence of the absolute title in Hopkins. If at any time within which equity will act, he attempted to thrdfcv off his true livery, and claim in another right, and uncJbr another garb, equity will reinvest him and render him answerable. It is said this is a trust by implication, and not a technical trust; and therefore since the act of 1819, it ought not to he continued. The terms used in the act on which the difficulty arises, are these: “That no person shall have, sue or maintain any action as such, either in law or equity, for any lands, tenements or hereditaments, but within seven years next after his right to commence such suit has come or fallen.” Having fixed the relation of mortgagor and mortgagee, and shown that the title is one and the same, and not adverse, when does the action accrue? When may the mortgagor have and maintain his action, against the mortgagee in possession? It may be answered, when the rents and profits have equalled the amount of the lien and its interest, or when the mortgagor may have tendered money and interest; or it may be said the action accrues to either, at any time within which equity will bar the complaint.
If the mortgagee may throw off his relation by foreclosure at any moment within the seven years, how can it *532 be said that he is holding adversely and for himself?— And inasmuch as he may so proceed to foreclose, why majr not the mortgagor, when he has prepared the way for it, proceed to redeem? Every thing is consistent so long as the parties .are made to stand in their proper character and relation; hut let one at his pleasure change that relation, and inconsistency and inevitable mischief will follow; place the parties as they have always been placed, so that neither can dispute the title of the other, (Powel on Mortgages, 221,) or pass the estate even by fine, and non claim (same book, 219,) and they are trustee and cestui que trust, (Jeremy E. J. 26—4 Kent C.) and equity stands ready to settle the accounts of the parties, and vest or disincumber the estate as maybe found just. The decree must be reversed; and this court rendering ⅛⅜> decree which should have been pronounced, are of option that the complainants are entitled to redemption of the premises; that Hopkins must account for the rents and profits of the estate, and be allowed for repairs and improvements.
Decree reversed.

 Ante, page 513.